Smith, C. J.
The plaintiff in error, at the May term, 1887, of the court of common pleas of this county, on an indictment charging him with murder in the first degree, was convicted of the crime of manslaughter, and sentenced to be imprisoned in the penitentiary for sixteen years. A petition in errror has been filed in- this court seeking a reversal of that judgment, and the only assignment of error argued to us, or relied upon by his *197 counsel is, that the trial court erred in allowing certain evidence to be submitted to the jury on behalf of the state.
The evidence so received was of this character, and was allowed in this manner, and under these circumstances: Thomas Roberts was called as a witness for the state, and in answer to inquiries made of him by the prosecuting attorney, gave testimony as to what took place at the time of the killing of the deceased by defendant. The prosecuting attorney then inquired of the witness if he had not testified as to 'these matters before the coroner; at the inquest held upon the body of the deceased, and he answered without objection that he had, and that his testimony there given, had been then written and read to him, and that he signed it. The counsel for the state then inquired of him whether he had not on that occasion made certain statements, naming them. To this the attorney for the defendant objected, whereupon a professional statement of the prosecuting attorney, in writing, was made to the court, to the effect that he was surprised by the testimony of the witness, who had testified at the inquest held by the coroner, and also before the grand jury which found the indictment against the defendant, and that his statements on those examinations were altogether different in essential and material points from those now given by him in court. The objection of the counsel for defendant was then overruled, and the questions allowed to be put to the witness, and answered by him, in substance denying that he had made such statements, to which ruling exception was duly taken.
The state was then allowed, before closing its evidence in chief, to call the coroner’s clerk, to show that he, as such clerk, had, at the time the witness gave his testimony at the inquest, reduced it to writing, and that it was read over to Roberts, and that he said it was right, and then signed it. He was then asked, whether Roberts had testified on that occasion to certain things, viz., those to which the witness on the stand had been asked if he so testified, and which he denied. The witness stated, that independently of the paper then written by him and signed by Roberts, he could not say whether he did or not. The paper was put into his hands, to refresh his recollection, and he then answered that *198 Roberts had so testified. These questions and answers werQ objected to, but the objection was overruled and exception taken. Substantially similar questions were put to, and answered by the coroner, except the latter testified that he distinctly remembered that such statements were made by Roberts. A like objection and exception were taken as to his evidence.
In the first place it is insisted by counsel for plaintiff in error, that the manner in which this evidence was introduced, so far as the coroner’s clerk is concerned, was irregular and improper. That it being shown by his own testimony that he had no independent recollection of what Roberts’ testified to on that occasion, that he was permitted to examine the paper written by him at the time, and read to and approved and signed by Roberts, and with his memory thus refreshed to say whether Robe.rts made certain statements on that occasion. This was, we think, competent and admissable evidence.
We are of the opinion, also, that the rule is now pretty well established, that when a party calls a witness, who gives testimony as to a material matter, entirely different from that which the party calling him had a right to expect, as for instance, to a statement wholly different'from that testified to by him on a former examination, and shows that he is adverse or hostile to the party calling him (as the court in this instance may have been satisfied of), or has since come under the influence of his adversary, the trial court on such showing has the discretion to permit the party calling him, to treat him as an adverse witness, so far, at lea'st, as to put leading questions to him, and otherwise to cross-examine him, and further to inquire of him whether he had not on a previous occasion (fixing the time and place), made other and different statements (naming them) from those made on his present examination. Wharton on Evidence, sec. 549; Ballard v. Pearsall, 55 N. Y. 230; Melhugh v. Corlier, 69 Eng. Com. Law Rep. 877.
But the point upon which we have difficultly in arriving at a satisfactory conclusion is this : If the witness on such examination denies that he made such statements, whether the person calling him can then call other witnesses to show that *199 he did. On this question we find a remarkable conflict in the authorities and the practice in different states. It is conceded on all hands, that a person calling a witness to testify on his behalf, in general represents him as worthy of belief, and certainly will not be permitted to impeach his general reputation for truth. For as stated in the books, “this would enable him to destroy the witness if he spoke against him, and to make him a good witness if he spoke for him.”
But he may show a state of fact entirely contrary to that testified to by such witness, though the effect of such evidence may be inferentially and incidentally to show that the witness produced by him is unworthy of belief; for the party who calls him, ought not to be sacrificed to his witness, who may have fraudulently imposed himself upon him for his own purposes, or under the influence of his adversary.
Similar reasons have led courts of very high repute to hold that in the interest of justice, the rule should be still further extended, and that under such circumstances the party thus surprised, without negligence on his part, should also be allowed to prove that his witness had made statements contradictory of his evidence on the trial, if the fact is denied by him. It was strongly upheld by Lord Denman in the English courts, and by other of the judges thereof, but it seems not to have been generally recognized even in that country. But so strong was the influence of these decisons in favor of it, that it was enacted as law by 17th and 18th Vic. C. 125, and the same has been done in quite a number of the United States, notably in Massachusetts and Michigan. Indeed it is so general now, that in the latest edition óf G-reenleaf on Evidence (1883) it is stated that the weight of authority is in favor of the rule. (Sec. 444.) But this seems to us hardly to he supported by the authorities. The cases in New York are strongly against it. See 53 N. Y. 230; 5 Denio, 112; 4 N. Y. 303. And the leading case in Pennsylvania (50 Pa. St. 490), decided, however, by a bare majority of the court, is to the same effect.
We are not advised of any decision of the supreme court of Ohio on this question. We are referred, however, by counsel for plaintiff in error to a decision of the old supreme court on the circuit, (Wright’s Rep. 736,) the syllabus of which is, that *200 “ when the declarations of a witness or party are called out, the party calling can not impeach his character, but may show by other evidence the facts as they are ” — and as to this there is no controversy; it is further stated in the decision of the judge which did not, however, involve the question here under discussion, that “the declarations of the persons whose declarations are so called out, can not be impeached by the persons calling them, but the fact may be shown as they really are by other evidence.”
C. H. Blackburn, for plaintiff in error.
W. H. Pugh, prosecuting attorney, for the state.
The district court of this county, in the case of The Mutual Life Ins. Co. v. Schmidt, Guardian, expressed the opinion, (though it was not a point actually decided) that such evidence was admissible.
In view then of the conflict in the authorities on that question, and of the fact that in our opinion there are strong reasons for allowing the court to exercise such a discretion and receive the evidence in the interest of justice, and of the further fact that the district court of this county has expressed the opinion that it is admissible, 'and thereby furnished a precedent to be followed by the courts of common pleas of the county, until otherwise adjudicated, and it being important that the practice in this matter be settled by the supreme court, we have come to the conclusion that we ought not on this ground reverse the judgment. The case is one in which the question is fairly presented, and it is the only one in it, and from its character- would probably be at once disposed of by that court. The expense of a new trial would be very great, and under all the circumstances of the case we think the judgment should be affirmed.