## ARNOLD v. STATE.

WITNESS—INTERROGATION OF BY PARTY CALLING HIM AS TO PREVIOUS DECLARATIONS—EVIDENCE—OBJECTIONS—INSTRUCTIONS.

1. Where a party calling a witness is surprised by his testimony, he may be permitted to interrogate the witness in respect to previous declarations made by the latter inconsistent with his testimony, for the purpose of probing his recollection, and by recalling such previous statements, inducing him to correct the error in his evidence, and make it consistent with his former declarations, and also for the purpose of explaining the circumstances which induced the party to call him.

2. That the answers of such a witness, so interrogated, may involve him in contradictions which may incidentally affect his credibility does not prevent such inquiry. (Groesbeck, C. J., dissenting.)

3. Upon such an examination, the questions not being objected to for incompetency, or as leading, or tending to discredit or impeach the witness, or that they were improper for any such or similar reason, and the questions being unobjectionable on the grounds indicated by objecting counsel on the trial, no error is committed in overruling the objections. (Groesbeck, C. J., dissenting.)

4. Whether a question shall be permitted that has already been answered must be allowed to rest very largely, if not entirely, within the sound discretion of the trial court. To authorize a reversal because such questions have been permitted there should appear to have been a flagrant abuse of discretion which has clearly been prejudicial to the complaining party.

5. An error, if any, in the refusal of the court to permit a witness to be examined in respect to a certain matter, is cured, where, while the witness is on the stand, the court subsequently informs the counsel complaining of such ruling, that he may proceed to examine the witness in reference to such matter, and counsel then declines or fails to do so.

6. A judgment will not be reversed on account of the giving of an instruction to the jury which, although it correctly and fairly states the law, is irrelevant, unless it is also harmful and prejudicial. (Groesbeck, C. J., dissenting.)

7. It is not prejudicial error to refuse an instruction, where the same matters therein contained are sufficiently and correctly covered by other instructions which are given.

8. An instruction, in relation to circumstantial evidence, is misleading and properly refused, which is open to the construction that each circumstance, not all taken together, must be consistent and in harmony with the guilt of the accused, and also that each circumstance must be of such a character that it cannot reasonably be true and the defendant be innocent.

[*Information filed in District Court October 23, 1893. Decided July 1, 1895.*]

ERROR to the District Court for Converse County. HON. RICHARD H. SCOTT, Judge.

George Arnold was prosecuted upon information for the crime of unlawfully killing neat cattle. He was convicted and sentenced to a term of three years in the penitentiary, and brings error. The material facts are stated in the opinion. The following instruction, among others, was requested by defendant on the trial and refused, to which refusal defendant excepted:

"The jury are instructed that in criminal cases, where the prosecution rely upon the circumstantial evidence alone for a conviction, it is not enough that all the circumstances proved are consistent with and point to the defendant's guilt; to authorize a conviction on circumstantial evidence alone, the circumstances must not only all be in harmony with the

guilt of the accused, but they must be of such a character that they cannot reasonably be true, in the ordinary nature of things, and the defendant be innocent, and they must be such as to leave no reasonable doubt in the minds of the jury of the defendant's guilt."

*M. B. Camplin* and *Baird & Churchill,* for plaintiff in error.

A party calling a witness cannot impeach his testimony by proving that he has made contradictory statements to those made on the witness stand or in any other manner. (People v. Safford, 5 Denio, 112; Thompson v. Blanchard, 4 N. Y., 303; Coulter v. Am. &c. Co., 56 N. Y., 585; Greenleaf Ev., sec. 442; Quinn v. State, 14 Ind., 589; Hurley v. State, 46 O. St., 320; Sissor v. Conger, 1 Thomp. &c. (N. Y.), 564; Com. v. Hudson, 11 Gray, 64; Craig v. Grant, 6 Mich., 447.) An exception to the rule exists where a statute authorizes such impeachment, and where the party calling the witness has been misled by fraud or artifice of the witness. (Dunlap v. Richardson, 63 Miss., 447; More v. Ry., 59 id., 243; McDaniel v. State, 53 Ga., 253.) The examination of the witness Dolan, in the case at bar, was not warranted and should have been refused. (Com. v. Welsh, 4 Gray, 535; People v. Jacobs, 49 Cal., 384.) Before any witness can be impeached upon contradictory statements made by him, he must be interrogated as to whether he made such statements, giving the time and place and the name of the person to whom made, together with the nature of such alleged statements. (Thomp. on Tr., sec. 496; 1 Whart. Ev., sec. 555, and authorities cited; Davis v. Franks, 33 Gratt., 425; Steamboat &c., 115 U. S., 69; Higgins v. Carleton, 28 Md., 138; Richardson v. Kelly, 85 Ill., 491; 43 Ia., 294; 55 Ind., 45; 15 N. C., 439; Henderson v. State, 70 Ala., 447; Runyan v. Price, 15 O. St., 11; Stacy v. Graham, 14 N. Y., 499; 15 Kan., 495; 11 Or., 52; 16 Cal., 173.) The instruction relative to the testimony of an accomplice was objectionable because there was no evidence of an accomplice in the case. Statements made by a witness out of court are not evidence. (Newell v. Homer, 120 Mass., 277; Smith v. Price, 8 Watts, 447.) It is error to submit to

the jury a fact, or a state of facts, which there is no evidence tending to prove. (2 Thomp. on Tr., sec. 2315 and cases cited.) It is error to refuse a properly drawn instruction tendered by an accused, touching the probative force of circumstantial evidence. (2 Thomp. on Tr., sec. 2500, and cases cited; 2 id., sec. 2347, and cases cited.) In a criminal case the proof ought to be not only consistent with the prisoner's guilt, but inconsistent with every other rational conclusion. (1 Greenl. Ev., sec. 34; People v. Schuler, 28 Cal., 490; 64 Cal., 440; 11 Nev., 334; 19 id., 365; 8 Ia., 477; 4 Pa. St., 269; 33 La. Ann., 537; 8 Mo., 67; 90 Ind., 1; 66 id., 428; 13 Tex. App., 483; 25 Miss., 584; 36 Ala., 212; 29 Fed., 503; 5 Or., 73; 45 Miss., 527; 2 Thomp. Tr., sec. 2505; 4 Lea., 266; 5 Cush., 296.) Evidence as to the demeanor and conduct of the accused is admissible as tending to disprove his guilt. (Teachout v. People, 41 N. Y., 7; People v. Wentz, 37 N. Y., 303; Com. v. Cuffee, 108 Mass., 285; Com. v. Crocker, id., 464; Roscoe Crim. Ev., 18; People v. Rathbun, 21 Wend., 509; Greenfield v. People, 85 N. Y., 75; State v. Baldwin, 36 Kan., 1; 3 Rice on Ev., 503.)

*Benjamin F. Fowler,* attorney general, for the State.

A party who calls a witness, and is taken by surprise by his unexpected and unfavorable testimony, may interrogate him with respect to former declarations which are inconsistent with his testimony, for the purpose of refreshing his recollection, and inducing him to correct his testimony, or explain his apparent inconsistency, and for such purpose his former declarations may be repeated to him, and he may be called upon to say whether they were made by him. (Rice Ev., par. 237.) The giving of an instruction not applicable to the evidence in a criminal case is not error, unless the principle of law stated is erroneous. (Thomp. on Tr., par. 2321; Upstone v. People, 109 Ill., 170; State v. McGuire, 50 Ia., 153; Ry. Co. v. Jacobs, 20 Ill., 487.) The instruction requested by the defendant on trial, relating to circumstantial evidence, was confusing, and went too far. (Thomp. on Tr., secs. 2507, 2509, and cases cited.)

POTTER, JUSTICE.

Plaintiff in error was convicted of the crime of unlawfully killing neat cattle, being charged with killing a certain black cow, the property of F. E. Wolcott & Company. The jury found the value of the animal to be fifteen dollars, which, under the statute, subjects the offender to imprisonment in the penitentiary, and he was sentenced to such imprisonment for the term of three years.

Several errors are assigned and relied on, which we will consider in their order.

It is first assigned as error that the court permitted counsel for the State to enquire of a witness, William Dolan, produced by it, concerning certain statements which he had made to said counsel, the sheriff and others, to the effect that he had witnessed the killing of the animal by the defendant Arnold.

When Dolan was called as a witness, it had already been shown that the head and some other remains of the slaughtered animal had been found near the ranch or house of Arnold, which was situated inside the pasture of F. E. Wolcott & Company; and wagon tracks were discovered leading therefrom to said ranch. Other circumstances had also been testified to tending to connect said killing with some one at the ranch of Arnold. Dolan testified, without objection, that at the time when it was claimed the animal had been killed, he was residing upon Arnold's ranch with him; that, when in company with Arnold one day, Prentice, an employe of F. E. Wolcott & Company, had asked them, "What did you fellows do with the beef you killed up the creek?" That he, Dolan, told him he did not know anything about any beef that was killed up the creek, but that there was a beef which had been killed and taken to town, which was an animal they had got from Grass creek; and he also testified such animal was not killed at the place where the black head had been found. Thereupon he was asked, "State if you know anything about a black head and black feet being found around there," to which he answered, "No; nothing more than what Prentice told me about it." Counsel for the State then put to him the following question: "Mr. Dolan, I want to refresh

your memory by calling your attention to a conversation you had with me in the office of the jail on last Wednesday, since the beginning of this court, in reference to this matter; and now ask you to state to the jury what you know in reference to the killing of a black cow near the Arnold ranch." This was objected to as immaterial and on the ground that the State cannot impeach its own witness. The objection was overruled and exception taken. The witness answered, "I know just what I stated here." This question was not objectionable, and the answer did not prejudice the defendant; therefore, on either ground, no error can be predicated upon it. He was then asked if he remembered a conversation with the sheriff, Mr. Williams and counsel in the August preceding in the office of the jail in reference to the matter, and he gave an affirmative reply. The following question was then propounded to him: "Now, Mr. Dolan, refreshing your memory by reference to that conversation, will you state to the jury what you know in reference to the killing of a black cow in August, 1892, near Arnold's ranch, in Converse County." Objection, on the ground that it had already been answered, being overruled, he replied, "What I have told here is all that I know about it."

Counsel for the State thereupon informed the court that he had placed reliance upon statements of said witness, that he did not care to state to the jury what they were, but he had been led to rely upon his testimony, and had been disappointed therein; that as he appeared to be a hostile witness he desired leave to examine him by cross-examination, and by asking leading questions. Defendant's counsel objected to "the statements of counsel in the presence of the jury." The court granted the leave, to which exception was taken. Up to this point it is clearly apparent that there was no error. The counsel for the State proceeded to interrogate the witness further in a leading manner, and first asked him this question: "Mr. Dolan, isn't it a fact that you, along about the 24th of August, 1892, witnessed the killing of one black VR cow in the Wolcott pasture, just above the pasture fence of the defendant Arnold; and that you so stated to the officers,

the sheriff and deputy of this county, and myself, on a day of August last of this year, in the county jail here in Douglas?" The objection made to this question, at the time, was that the examination in part called for matters already testified to, and for the further reason that it is the fact and not what witness may have stated that the jury are to take evidence upon. The objection being overruled, the witness answered, "No, sir, I did not witness it." It is also clear that whether this question was objectionable or not, the answer did not and could not prejudice the defendant. The objection, however, now urged that the State could not impeach its own witness, nor discredit him, or that it was incompetent was not made to the question at the time. The next question was, "Answer the rest of the question." This was not objected to, and was answered, "I made such a statement to you; I told you just about that." No objection was offered to the answer, nor was any motion made to strike it out. If the objection to the preceding question should be held as applying to the one answered as last above, it was not made on the ground now complained of. Several following questions were put to the witness with respect to what he had told the counsel and the officers, some of which were not answered; and to those which did elicit an answer, the witness admitting he had made such statements, the objection in each instance made thereto by counsel for defendant was either that the question had already been answered, or as being indefinite as to time and place. Upon the witness being recalled by the State and other similar interrogatories being propounded to him, objections were interposed upon the sole ground that they were immaterial. The witness had stated that his former statements were untrue.

Whatever the rule of law may be as to the right of the prosecuting counsel to enquire of a hostile or unwilling witness produced by him concerning his previous statements, as applicable to the case at bar, we are clear that in no instance was the objection made upon the ground that it was incompetent or improper to do so. The attention of the court was not at the time called to the matter of objection now urged

by counsel for plaintiff in error, and the court might well assume that no claim or contention of that kind was intended to be asserted. To the first question attempting to refresh the memory of the witness, counsel for defendant, it is true, did claim that the State could not impeach its own witness; but when permission was requested to examine him as a hostile witness, no objection thereto was offered, it was only stated that objection was taken to the statements of counsel in the presence of the jury.

The questions complained of not being objectionable on the grounds indicated by the counsel for defendant upon the trial, and no objection thereto then being stated on the ground of either incompetency, the leading character thereof, that they tended to discredit or impeach the witness, or that they were improper for any such or similar reason, no error was committed in overruling the objections. Whether a question shall be permitted that has already been answered must be allowed to rest very largely, if not entirely, within the sound discretion of the trial court; certainly to authorize a reversal of a judgment for such a reason there should appear to have been a flagrant abuse of discretion which has clearly been prejudicial to the complaining party.

Notwithstanding that the reason already assigned might practically dispose of the assignment of error under discussion, we go further than that. We think the circumstances bring the case clearly within the rule, best sustained by authority, allowing a party to interrogate an unwilling witness produced by him respecting his previous statements contradictory of, or inconsistent with, his testimony. Hurley v. State, 46 O. St., 320; Bullard v. Pearsall, 53 N. Y., 230; State v. Tall, 43 Minn., 273; State v. Sorter, 52 Kan., 531; Rice on Evidence, Vol. 1, p. 615.

We do not think the trial court in the case at bar abused the sound discretion with which it is vested. It is true that a party producing even a hostile witness may not, upon being surprised by his testimony, proceed to examine him as to previous statements or otherwise, merely to discredit him, but we do not perceive that to have been the controlling purpose in

this case. That the answers of such a witness may involve him in contradictions so as to incidentally affect his credibility does not prevent the inquiry. The purpose evidently was to probe the recollection of the witness, and induce him to correct the error in his testimony, and make it consistent with his former statements, as well as to explain the circumstances which induced the party to call him. For either purpose the inquiry was proper. The fact that our legislature has recently enacted a statute, which is now the law in this State, expressly authorizing such an examination of one's own witness, is greatly persuasive of the reasonableness of the rule we here approve; more especially so when we consider that other States have adopted similar statutes. The witness Dolan, it appeared, had been living at Arnold's ranch with him at the time when it was alleged the animal had been unlawfully killed. After causing himself to be called as a witness for the State by giving information to the effect that he had witnessed the crime, to the surprise of the State's counsel he denies all knowledge of it, and distinctly says he did not witness it. This statement could not have been drawn from him as a witness for defendant; and thereby the prosecution was injuriously affected by his testimony. Occupying the position he did, his denial of knowledge, under all the circumstances, resulted as injuriously to the party calling him as testimony of a positive fact, if that kind of testimony is required to authorize this character of inquiry. We do not think the case, so much relied on, of Commonwealth v. Welsh, 4 Gray., 535, conflicts with the views here expressed as applicable to the facts in this case; if it does, and if it was there intended to declare a doctrine which should be inelastic, and should under any and all circumstances, regardless of the injurious effect upon the disappointed party, preclude an inquiry such as is here complained of, when the witness has denied any knowledge of a fact concerning which he has been examined, then the majority of this court decline to follow it.

It would hardly be questioned, that had the witness Dolan corrected his testimony and admitted the truth of his former statements, the inquiry would have been proper as an induce-

ment to him to speak the truth; I cannot comprehend how the result of the examination, whether successful or otherwise, can affect in any way the competency of the original inquiry, or of the questions which are propounded. If success crowning the efforts of counsel for the State would have rendered the method permitted and employed unobjectionable, surely it is just as free from objection if failure ensued and the witness maintains the truth of his testimony and the falsity of his previous statements, as in the case before us.

The second assignment of error charges that the verdict is not sustained by the evidence. We cannot agree with counsel asserting this proposition; having carefully considered all the evidence, we think the verdict is amply sustained thereby.

It is assigned as error that the court refused to allow the witness Dolan to explain how he came to make the statements which he had admitted having made. This, if erroneous, was subsequently cured. While the witness was on the stand, counsel for prosecution withdrew all objection to such explanations being made, and counsel for defendant was informed by the court he might proceed to examine the witness in that respect, which counsel then declined, or at least failed to do.

The court gave to the jury an instruction relative to the testimony of an accomplice. The law with reference to such testimony was fairly well stated in the instruction. It is urged, however, that it was improper because there was no testimony of an accomplice given upon the trial. We are not sure of the correctness of this contention. The jury might, from the testimony of Dolan, entirely outside of his admission of previous statements, have looked upon him as an accomplice; and, although his testimony may have been very slight, we are not prepared to say that it was entirely improper to caution the jury with respect to the testimony of an accomplice, and explain in that connection the extent of corroboration required in such case. Further than that, however, we cannot impute any prejudice to the defendant by the giving of the instruction complained of; if irrelevant we cannot conceive that in this case it was harmful.

The last assignment of error is the refusal of the court to give the tenth instruction requested by the defendant, which attempted to define the effect of circumstantial evidence. The counsel for plaintiff in error is mistaken in his statement that no instructions were given upon the effect of such evidence. The court gave to the jury instructions numbers five and nine, requested by defendant, both of which had reference to circumstantial evidence and the effect thereof, and correctly as well as sufficiently cautioned and instructed the jury in that regard. We are inclined to look upon said tenth request as misleading, seemingly open to the construction that each circumstance, not all taken together, must be consistent and in harmony with the guilt of the accused, and also that each circumstance must be of such a character that it cannot reasonably be true and the defendant be innocent. However this may be, the jury were sufficiently instructed in this particular.

For the foregoing reasons the majority of the court conclude that there is no error in the record.

*Judgment affirmed.*

CONAWAY, J., concurs.

GROESBECK, C. J., dissents.

GROESBECK, CHIEF JUSTICE.

I dissent. The witness Dolan called by the prosecution testified that he knew nothing about the killing of the animal for the killing of which the defendant was accused, except what was told to him by Prentice, a witness for the prosecution. Upon the statement of the attorney for the prosecution, that the witness appeared to be "hostile," the court permitted the examination of the witness as to statements made by the witness out of court. I think these questions were sufficiently objected to, even though the language of defendant's attorney in making the objections was perhaps technically inexact. The counsel objected to one question which contained a direct leading question, asking the witness if he had not witnessed the killing of the cow about the 24th of August, 1892, at a certain place named in the question, and

a question as to the statements of the witness to that effect made to the examining attorney out of court, specifying the time and place of the statements and who were present. This question was objected to partly upon the ground that "that it is the fact and not what witness may have stated to the State that the jury are to take evidence upon." When the witness answered the first part of the question, and said that he did not witness the killing of the animal, counsel for the State asked him to "answer the rest of the question," and no objection was taken to that. I think that this reason for holding that the question was not objected to properly is purely technical. There were three conversations brought to the attention of the witness, at which he admitted that he made statements to the examining counsel and others inculpating the defendant, inconsistent with his testimony that he knew nothing about the affair. He testifies in court, in response to the question of the attorney for the defendant, that all these statements were untrue. A party may have the right to contradict his witness who unexpectedly testifies against him, by cross-examination, as to what he had stated in regard to the matter on a former occasion, either in court or otherwise, and thus refresh the memory of the witness, and give him full opportunity to set the matter right if he will, and, at all events, for the purpose of setting the party right before the jury. But this cannot be done for the mere purpose of discrediting the witness. Greenleaf on Evidence, sec. 444a, a note to the statement of the author. Com. v. Welsh, 4 Gray, 535. This in effect is the rule announced in Bullard v. Pearsall, 53 N. Y., 230, where it is said that "such questions (as to previous declarations inconsistent with the evidence of the witness) may be asked for the purpose of probing his recollection, recalling to his mind the statements he has previously made, and drawing out an explanation of his apparent inconsistency. This course of examination may result in satisfying the witness that he is fallen into error and that his original statements were correct, and it is calculated to elicit the truth. It is also proper for the purpose of showing the circumstances which induced the party to call him. Inquiries

calculated to elicit the facts, or to show to the witness that he is mistaken and to induce him to correct his evidence, should not be excluded simply because they may result unfavorable to his credibility.  *  *  *  As a matter of course, such previous unsworn statements are not evidence, and when the trial is before a jury that instruction should be given." It is stated in the syllabus to the opinion, and this is the doctrine of the case, that where the party cross-examines his own witness, and the sole effect of an affirmative answer to a question asked by such party will be to discredit the witness, the question is properly excluded, and this rule is the correct one under the authorities. Such I believe to be the ruling in the case of Hurley v. State, 46 O. S., 320. Applying these rules to the case at bar, there was manifest error in the action of the court and counsel. No instruction or direction was given to the jury to the effect that such unsworn previous statements of the witness were not evidence. On the contrary, additional error was committed when the court, against the objection of the defendant, gave to the jury the following instruction: "The jury are instructed that they are to take an accomplice's testimony with caution, unless it is corroborated by other evidence of facts and circumstances as proven at the trial. The corroborating evidence need not of itself be sufficient to show the commission of the crime nor connect the defendant with it, nor need it be wholly inconsistent with the theory of the defendant's innocence; it is enough if it tends to connect the defendant with the commission of the crime." This instruction was clearly erroneous. The only evidence that could possibly be considered that of an accomplice was the testimony of Dolan, and nothing in his testimony shows that he was connected with the crime. He rented the ranch of defendant near the scene of the killing and was occupying it when the alleged offense was committed, and was in company with the defendant when he met Prentice, a witness for the prosecution, who accused both of them of killing the cow. There was not even "slight" evidence that Dolan was an accomplice. With this instruction in the case, and in the absence of any instruction modifying it, or an instruction or direction

to the jury not to consider the statements made by Dolan out of court, which he stated under oath were untrue, it is clear to my mind that the jury regarded such statements as substantive evidence, and the evidence of an accomplice. In a doubtful case like this where the evidence was purely circumstantial, this was sufficient to turn the scale against the defendant. It is not proper, in my judgment, to permit the prosecution to manufacture evidence in this way, or to get it before the jury as evidence, without asking the defendant to explain his inconsistent statements, and without any direction to the jury to disregard such statements as evidence. When instructions are given to the jury, all extraneous matter must be excluded from the case, and no instructions should be based on an assumed fact not in the record, and especially the judge should not state anything not in the proofs. Bishop's New Crim. Pro., sec. 978, and cases cited; Clark's Crim. Proc., 464, et seq.

The fact that by legislation since the trial, a party is permitted to impeach his own witness is no reason for upholding the rule contended for in the majority opinion. The statute is not declaratory of the common law, but establishes a new rule of evidence. But even if it could be applied to the case at bar, yet there would be error in the action of the court and counsel in the case at bar. This statute provides that a party producing a witness shall not be allowed to impeach his credit by evidence of his bad character, but may contradict him by other evidence, and may also prove that at other times he has made statements inconsistent with his present testimony, and this rule applies to criminal as well as to civil causes. Before the proof last mentioned can be given, the circumstances of the supposed statements sufficient to designate the particular occasion as near as may be must be mentioned to the witness, and he must be asked whether or not he made such statements, and, if so, "allowed to explain them." Ch. 68, Sess. Laws 1895. It seems that under this statute, the explanation of the inconsistent statements must go with his testimony, and that it would not do to thrust upon the defendant the burden of requiring an explanation

from the witness. However, under the common law rule, in force at the trial of the case, this explanation should have been required of the witness while he was being examined by the prosecution, in my judgment. This would be fair to the witness and just to the defendant. But independently of this,. it plainly appears in the record that the purpose of the prosecution was not to elicit the truth from the witness, as it was not attempted by the prosecution to get any explanation at all from him, and only withdrew its objection to his explanation after all the statements had gone to the jury. But aside from this unfair and prejudicial examination of the witness, the error of the court below is glaring. It should have directed the jury to disregard the previous unsworn statements of the witness Dolan, which were stated by him to be untrue. The authority cited in the majority opinion shows this to be the rule. Bullard v. Pearsall, supra. This error was only intensified by the action of the court in instructing the jury as to the evidence of an accomplice, when there was no evidence whatever given by an accomplice. The jury must have given these statements the force of evidence, under the instruction of the court, as these statements of Dolan would have made him an accomplice if he had testified to their truth. The judgment of the district court should be reversed and the defendant awarded a new trial.