132 N.J. Super. 530 (1975)
334 A.2d 364
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LASZLO RAJNAI AND ROGER EARL HOLT, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1974.
Decided March 4, 1975.
*534 Before Judges MATTHEWS, FRITZ and BOTTER.
Mrs. Jane G. Kleinfeld, Assistant Deputy Public Defender, argued the cause for appellant Laszlo Rajnai; Ms. Randall W. Westreich, Assistant Deputy Public Defender, argued the cause for appellant Roger Earl Holt (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Glenn Kushel, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Carl W. Swanson, Jr., Deputy Attorney General, of counsel and on the briefs).
*535 The opinion of the court was delivered by BOTTER, J.A.D.
Defendants Rajnai and Holt were convicted in a jury trial of possession of a controlled dangerous substance, heroin, in violation of N.J.S.A. 24:21-20(a) (1). Both were given suspended indeterminate sentences to "Yardville," and probation terms of five years and three years, respectively, were imposed. Each defendant has appealed and, with leave of court, has filed a separate brief urging various grounds for reversal of their convictions.
There was evidence from which the jury could find the following facts supportive of the convictions. Patrolman Warn approached a Volkswagen owned by defendant Rajnai which was in the parking lot of an apartment house. He observed Rajnai in the driver's seat, Holt in the rear behind the passenger's seat and two other passengers, one in the front and one in the rear. All had previously been in Holt's apartment. When the occupants were ordered out of the car the officer observed Holt reach down and throw something under an adjacent car, later identified as a package containing ten glassine packets of heroin, three syringes, some needles, a bottle cap and a piece of moist cotton. In the back seat of the car the officer found an envelope containing white powder which proved to be heroin and a wad of tissue soaked in alcohol. He also observed that a section of the floor boards in the rear of the vehicle was missing, leaving a hole approximately 7 x 14 inches.
Defendant Rajnai argues that the court erred in failing to grant his motion for judgment of acquittal at the close of the case and that the finding of guilt as to him was contrary to the weight of the evidence. We reject both of these contentions. Considering all the circumstances there was sufficient evidence for the jury to determine beyond a reasonable doubt that defendant Rajnai unlawfully possessed heroin in his vehicle on the night in question. N.J.S.A. 24:21-20(a) (1) makes it a crime to possess "actually or constructively" a controlled dangerous substance, such as heroin, unless otherwise authorized by law. One who intends *536 to exercise control and dominion over an object, knowing its character, is said to be in possession of that object. State v. Reed, 34 N.J. 554, 557 (1961); State v. Labato, 7 N.J. 137, 148 (1951); State v. Reyes, 98 N.J. Super. 506, 512 (App. Div. 1968), certif. den. 51 N.J. 582 (1968). Actual physical, manual possession is not required if the intention to exercise such dominion and control over the object is manifest, in circumstances where it is reasonable to infer that the capacity to do so exists. State v. Reyes, supra; State v. Brown, 67 N.J. Super. 450, 454-455 (App. Div. 1961). Possession need not be exclusive but may be jointly exercised by two or more persons. State v. Puckett, 67 N.J. Super. 365, 376 (App. Div. 1960), aff'd 34 N.J. 574 (1961). Proof of possession may be by circumstantial evidence as well as direct evidence. See State v. Humphreys, 54 N.J. 406, 413-414 (1969); State v. Reyes, supra.
In State v. Humphreys, supra, the court held that evidence was sufficient to support a conviction of a defendant for unlawful possession of a gun when defendant was in the front seat of a car and a revolver was found wedged between the cushions of the back seat. The court observed that the gun was "within the zone of Humphreys' knowledge and control," and the jury could find an intention to exercise dominion over it. For similar reasons in the case at hand we find sufficient evidence to sustain the verdict. Cf. Dolson v. Anastasia, 55 N.J. 2, 6 (1969). Therefore, denial of defendant's motion for judgment of acquittal was correct. State v. Reyes, 50 N.J. 454, 458-459 (1967). We also reject Holt's contention that the verdict as to him was against the weight of the evidence. He was in the back seat where an envelope containing heroin was found, and the jury could have concluded that he was the one who threw away the package of heroin and paraphernalia.
Defendants Rajnai and Holt also contend that sufficient proof of the chain of possession was not established to support the admission into evidence of Exhibit S-3, the white envelope containing heroin. Although S-3 was not *537 produced with the other seized contraband on the first day of the trial, it was found at police headquarters and produced the following day when it was identified and its earlier absence explained. The trial judge was correct in admitting this evidence. The sufficiency of the foundation for the offer of an exhibit is left to the discretion of the trial judge. State v. Brown, 99 N.J. Super. 22, 27 (App. Div. 1968), certif. den. 51 N.J. 468 (1968) Clearly there was no abuse of discretion here.
We find no error, also, in the admission of the syringes and bottle cap (a cooker) which had been discarded by the rear seat passenger, allegedly Holt. This narcotic paraphernalia was relevant to show intent and knowledge with respect to the possession of the heroin, at least as to the defendant Holt. It was circumstantial evidence applicable to both defendants and was part of the res gestae in that the possession of the paraphernalia was simultaneous with that of the heroin. Evid. R. 55; State v. Campisi, 47 N.J. Super. 455 (App. Div. 1957), certif. den. 26 N.J. 304 (1958). See also State v. Williams, 110 N.J. Super. 64 (App. Div. 1969), aff'd o.b. 56 N.J. 53 (1970); State v. Smith, 84 N.J. Super. 452, 460 (App. Div. 1964), certif. den. 43 N.J. 270 (1964). Although evidence of "other crimes" may have some potential for prejudice, in the case at hand we find no abuse of the trial court's discretion in refusing to exclude this evidence under Evid. R. 4.
Normally, a limiting instruction should be given by the trial judge sua sponte when "other crime" evidence is admitted so that the jury will not give it greater scope than is justified. Evid. R. 6; State v. Lair, 62 N.J. 388 (1973); State v. Campisi, supra, 47 N.J. Super. at 458-460. No request for such an instruction was made at trial. Accordingly, the error will be disregarded unless it can be shown that it was "clearly capable of producing an unjust result." R. 2:10-2; State v. Macon, 57 N.J. 325, 335-338 (1971). The failure to give a limiting instruction does not necessarily require the reversal of a conviction. See State v. Lair, supra, *538 where a conviction was sustained despite the failure to limit the jury's consideration of defendant's prior criminal convictions. The same result was reached where the trial court failed to give a limiting instruction as to the use of "fresh complaint" evidence in a rape case. State v. Tirone, 64 N.J. 222, 227 (1974).
Where the charge is unlawful possession of heroin, the relevancy of paraphernalia for the ingestion of the drug is obvious, and would be even to laymen. The introduction of such evidence lacks the capacity to create undue prejudice, especially where the drug itself has been introduced in evidence. It is difficult to imagine what useful purpose would be served by a limiting instruction in such a case, as contrasted with the case in which a separate and distinct crime is proved against a defendant. Accordingly, we find the failure to give a limiting instruction harmless and no warrant for reversal. Elsewhere, in a number of jurisdictions, the failure to give a limiting instruction as to "other crime" evidence has been held not reversible error absent a request for a proper charge. United States v. Miller, 478 F.2d 1315, 1318 (2 Cir.1973), cert. den. 414 U.S. 851, 94 S.Ct. 144, 38 L.Ed.2d 100 (1973); Petley v. United States, 427 F.2d 1101, 1106 (9 Cir.1970), cert. den. 400 U.S. 827, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970), (a pipe with residue of marijuana admitted to prove a "knowing possession"); Dirring v. United States, 328 F.2d 512, 515 (1 Cir.1964), cert. den. 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964); United States v. Smith, 283 F.2d 760, 764 (2 Cir.1960), cert. den. 365 U.S. 851, 81 S.Ct. 815, 5 L.Ed.2d 815 (1961); Berry v. United States, 271 F.2d 775, 776-777 (5 Cir.1959), cert. den. 362 U.S. 903, 80 S.Ct. 612, 4 L.Ed.2d 555 (1960); People v. Chism, 390 Mich. 104, 211 N.W.2d 193, 200 (Sup. Ct. 1973); State v. Harris, 106 R.I. 643, 262 A.2d 374, 376 (Sup. Ct. 1970); State v. Noyes, 69 Wash.2d 441, 418 P.2d 471, 475 (Sup. Ct. 1966), cert. den. 386 U.S. 968, 87 S.Ct. 1053, 18 L.Ed.2d 122 (1967). See also, 1 Wigmore, Evidence (3 ed 1940), § 13 *539 at 301: "the better opinion is that the opponent of the evidence must ask for that [limiting] instruction; otherwise, he may be supposed to have waived it as unnecessary for his protection."
An additional contention raised by Holt is that the trial court erred in allowing Officer Warn to correct his testimony after refreshing his recollection from recorded testimony which he had previously given concerning Holt's position in the car. About four months before the trial the officer had testified on a motion to suppress evidence. He then placed Holt in the back seat on the passenger's side, and he testified that after he observed this occupant "reach down" he then saw a package rolling toward a nearby car. At the trial, however, Officer Warn first testified that Holt was in the front passenger seat. He was then asked to read his prior testimony. Thereafter, over objection, the court allowed him to state that he was mistaken, that Holt was seated in the rear of the car, on the passenger's side, and that he was certain of this. Defendant Holt contended then and now that the prosecutor was improperly allowed to impeach the testimony first given on direct examination by his own witness.
The rule that a party may not impeach his own witness may have derived from the practice in primitive trials of using "oathhelpers" or compurgators to support a party's cause and for whom the party implicitly vouched. A rule later developed preventing a defendant from discrediting his own witness, although in early times the prosecution was exempt from this restriction. Johnson v. Baltimore & Ohio R. Co., 208 F.2d 633, 635 (3 Cir.1953), cert. den. 347 U.S. 943, 74 S.Ct. 639, 98 L.Ed. 1091 (1954); Becker v. Eisenstodt, 60 N.J. Super. 240, 248 (App. Div. 1960); 3A Wigmore, Evidence (Chadbourn rev. 1970), § 896 at 659-660; see Report of the N.J. Supreme Court Committee on Evidence, 60-61 (1963). The rule has long been modified in New Jersey to allow a party to neutralize adverse testimony which comes as a surprise to him. Evid. R. 20; State v. Cooper, *540 10 N.J. 532, 560-561 (1952); State v. D'Adame, 84 N.J.L. 386 (E. & A. 1913). Here, however, the prosecutor contended at trial that he was not endeavoring to "impair the credibility" of his own witness, nor to "introduce extrinsic evidence relevant upon the issue of credibility," as precluded by Evid. R. 20. The prosecutor did not offer in evidence the prior testimony of the witness. The prosecutor merely asked to have the witness refresh his recollection as to testimony he previously gave on the subject to determine whether that testimony or his current testimony was correct. After doing so the witness then testified that he realized his error and that he was able to recall the events with certainty. While this practice is not to be encouraged, because it contains the same vice as leading questions,[1] a trial judge should have discretion to permit this procedure in order to elicit "all relevant evidence." Evid. R. 7(f); State v. Kwiatkowski, 83 N.J.L. 650, 653-654 (E. & A. 1912); State v. Silver, 2 N.J. Misc. 479, 480, 127 A. 545, 546 (Sup. Ct. 1924), aff'd o.b. 101 N.J.L. 232 (E. & A. 1925); see State v. Wise, 19 N.J. 59, 77-78 (1955); 3A Wigmore, op. cit., § 904 at 675; McCormick, Evidence, § 38 at 71 (1954); cf. Nobero Co. v. Ferro Trucking, Inc., 107 N.J. Super. 394, 404 (App. Div. 1969).
Dean Wigmore endorses the practice of allowing prior statements of a witness to be used in the "always legitimate effort of the party to stimulate his witness' memory and obviate the effect of temporary forgetfulness." 3A Wigmore, supra, § 904 at 675. In support, Wigmore quotes from cases which go beyond the needs of the instant case, since, as *541 noted above, the prior contradictory statement was not used here to confront the witness openly nor to "probe" the accuracy of his recollection. Cf. Bullard v. Pearsall, 53 N.Y. 230, 231-232 (Ct. App. 1873), quoted with approval in People v. Freeman, 9 N.Y.2d 600, 217 N.Y.S.2d 5, 176 N.E.2d 39 (Ct. App. 1961), where the court said:
Such questions may be asked of the witness for the purpose of probing his recollection, recalling to his mind the statements he has previously made, and drawing out an explanation of the apparent inconsistency. This course of examination may result in satisfying the witness that he has fallen into error and that his original statements were correct; and it is calculated to elicit the truth. It is also proper for the purpose of showing the circumstances which induced the party to call him. Though the answers of the witness may involve him in contradictions calculated to impair his credibility, that is not a sufficient reason for excluding the inquiry; * * * inquiries calculated to elicit the facts, or to show to the witness that he is mistaken, and to induce him to correct his evidence, should not be excluded simply because they may result unfavorably to his credibility. * * * As a matter of course, such previous unsworn statements are not evidence, and when the trial is before a jury, that instruction should be given. [53 N.Y. at 231-232]
While broad latitude may be allowed in examining a hostile witness, especially a party called by his adversary in a civil action (see Becker v. Eisenstodt, supra), it is clear that prior testimony, not itself offered in evidence, may be used in a limited fashion to refresh the recollection of a non-hostile witness. See also, Hileman v. Indreica, 385 Mich. 1, 187 N.W.2d 411 (Sup. Ct. 1971), holding that, in the presence of the jury, a witness may be confronted with his prior deposition for the purpose of "refreshing his recollection." (The broad scope of the court's holding seems to have been influenced by the hostile interest of the witness.) If the recollection of the witness is not refreshed, however, and the proponent of the witness offers the prior statement in evidence, it can be used only for purposes of neutralization. Evid. R. 20.
Accordingly, the judgments of conviction are affirmed.
NOTES
[1] In McCormick, Evidence, § 38 at 71 (1954), it is said:

Moreover, as in the case of leading questions, he [the trial judge] may decline to permit the use of the aid to memory where he regards the danger of undue suggestion as outweighing the probable value, in the exercise of his discretion to control the manner of the examination.
See Zimmer v. Westinghouse Electric Corp., 26 N.J. 339, 351 (1958).