686 A.2d 1260

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
MICHAEL BALDWIN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 27, 1996—Decided January 15, 1997.

Before Judges LONG, SKILLMAN and A.A. RODRÍGUEZ.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Lon Taylor*, Assistant Deputy Public Defender, of counsel and on the brief).

*Peter Verniero,* Attorney General, attorney for respondent (*Teresa A. Blair,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Tried before a jury, defendant was found guilty of purposeful or knowing murder, in violation of *N.J.S.A.* 2C:11–3a(1),(2), possession of a handgun without a permit, in violation of *N.J.S.A.* 2C:39–5b, and possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4a. The court sentenced defendant to life imprisonment, with a thirty-year period of parole ineligibility, for murder, and a concurrent five year term of imprisonment for possession of a handgun without a permit. The court merged defendant's conviction for possession of a weapon for an unlawful purpose into his conviction for murder. The court also imposed a total VCCB assessment of $100 and a total SNSF assessment of $150.

On appeal, defendant makes the following arguments:

I. THE TRIAL COURT'S TOTAL OMISSION OF ANY INSTRUCTION RE-GARDING THE JURY'S OBLIGATION TO ASSESS THE CREDIBILITY OF THREE INCRIMINATORY OUT–OF–COURT STATEMENTS ALLEG-EDLY MADE BY DEFENDANT TO TWO DIFFERENT PERSONS DE-PRIVED DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL. (Not Raised Below)

II. THE TRIAL COURT'S FAILURE TO CAUTION THE JURY REGARD-ING THE RELIABILITY OF DEFENDANT'S THREE INCRIMINA-TORY OUT–OF–COURT ORAL STATEMENTS DEPRIVED DEFEN-DANT DUE PROCESS OF LAW AND A FAIR TRIAL. (Not Raised Below).

III. WRIGHT'S TESTIMONY THAT HE OVERHEARD DEFENDANT SAY TO SOME UNKNOWN PERSON "GIVE ME YOUR MONEY, OR YOU WILL BE NEXT," IMMEDIATELY AFTER THE SHOOTING, CONSTI-TUTED EXTREMELY PREJUDICIAL OTHER–CRIMES EVIDENCE DEPRIVING DEFENDANT OF DUE PROCESS OF LAW AND A FAIR TRIAL. (Not Raised Below)

IV. THE TRIAL COURT'S TOTAL OMISSION OF A JURY CHARGE ON "MERE PRESENCE" DEPRIVED DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL. (Not Raised Below)

V. THE ACCUMULATION OF ERRORS DENIED DEFENDANT DUE PRO-
CESS OF LAW AND A FAIR TRIAL.

VI. THE IMPOSITION OF A MAXIMUM LIFE SENTENCE FOR MURDER
WAS NOT SUPPORTED BY A PROPER ANALYSIS OF AGGRAVATING
AND MITIGATING FACTORS.

Except for defendant's first two arguments relating to the trial
court's failure to give the jury special cautionary instructions
regarding its consideration of his alleged inculpatory out-of-court
statements, defendant's arguments are clearly without merit and
do not require discussion. *R.* 2:11–3(e)(2).

Defendant and the victim were competitors in the sale of drugs
in the same area of Newark. At about 8:30 p.m. on November
11, 1993, an assailant shot the victim from close range on a street
in the neighborhood where he sold drugs. The only issue at trial
was the identification of defendant as the assailant.

The State's evidence against defendant consisted of not only the
testimony of three eyewitnesses to the crime but also three
inculpatory out-of-court statements allegedly made by defendant.
Rashid Dorsey testified that a week before the murder defendant
offered him $1,000 to shoot the victim. Fuguan Wright testified
that defendant told him before the murder that the victim had
been threatening him but that "he can always get a gun and do
what he wants to do with [the victim.]" Wright also testified that
defendant accosted a person called "Treat" immediately after
shooting the victim, and said, "give me your money or you will be
next."

Defendant argues that because the State presented evidence of
these alleged inculpatory out-of-court statements, the trial court
was obligated to instruct the jury in accordance with the principles
set forth in *State v. Hampton,* 61 *N.J.* 250, 294 *A.*2d 23 (1972) and
*State v. Kociolek,* 23 *N.J.* 400, 129 *A.*2d 417 (1957). Since defen-
dant did not request or object to the court's failure to give such
instructions, their omission would be grounds for reversal only if
"clearly capable of producing an unjust result." *R.* 2:10–2; *State
v. Jordan,* 285 *N.J.Super.* 589, 594, 667 *A.*2d 1094 (App.Div.1995),

*petition for certif. denied,* 143 *N.J.* 518, 673 *A.*2d 276 (1996), and *cross-petition for certif. granted,* 146 *N.J.* 498, 683 *A.*2d 201 (1996).

A trial court has an "absolute duty" to properly instruct the jury regarding its fact-finding responsibilities, *State v. Concepcion,* 111 *N.J.* 373, 379, 545 *A.*2d 119 (1988), which may include special cautionary instructions relating to the jury's consideration of particular kinds of evidence. *See, e.g., State v. Fertig,* 143 *N.J.* 115, 127, 668 *A.*2d 1076 (1996) (hypnotically refreshed testimony); *State v. Gross,* 121 *N.J.* 1, 16–17, 577 *A.*2d 806 (1990) (prior inconsistent statements); *State v. Green,* 86 *N.J.* 281, 291–94, 430 *A.*2d 914 (1981) (identifications); *State v. Sinclair, supra,* 57 *N.J.* at 63, 269 *A.*2d 161 (prior conviction of a defendant or other witness); *State v. Hampton, supra* (confessions); *State v. Begyn,* 34 *N.J.* 35, 54, 167 *A.*2d 161 (1961) (accomplice testimony); *State v. Kociolek, supra* (oral statements). However, the need for such special cautionary instructions depends on the nature of the evidence presented at the trial. Consequently, we conclude that a trial court is not automatically required to give the forms of instructions mandated by *Hampton* and *Kociolek* whenever any kind of an alleged inculpatory statement of a defendant is admitted into evidence. Rather, the need for these instructions depends upon the circumstances under which the statement was allegedly made and the issues which the jury must consider in evaluating its evidential significance.

In *Hampton* the Court held that where an issue is raised as to the admissibility of a confession on the grounds that the State violated the defendant's rights under *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L. Ed.*2d 694 (1966) or that defendant's confession was given involuntarily, and the court rules that the confession is admissible, the court should not advise the jury of this ruling but should instruct it to "decide whether in view of all the same circumstances the defendant's confession is true." 61 *N.J.* at 272, 294 *A.*2d 23. The Court held that the jury should be further instructed that "[i]f they find that [the confession] is not true, then they must treat it as inadmissible and disregard it

for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence." *Ibid.*

The Court's holding in *Hampton* is now codified in *N.J.R.E.* 104(c), which provides in pertinent part:

*Where by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant,* the judge shall hear and determine the question of its admissibility out of the presence of the jury.... If the judge admits the statement the jury shall not be informed of the finding that the statement is admissible but shall be instructed to disregard the statement if it finds that it is not credible.

[Emphasis added.]

Thus, the Court in *Hampton* required the trial court to instruct the jury to decide whether a defendant's out-of-court statement is credible only in a case where there has been a pretrial hearing involving the admissibility of the statement on the grounds of an alleged violation of the defendant's *Miranda* rights or involuntariness. Similarly, *N.J.R.E.* 104(c) requires the trial court to instruct the jury to make a determination as to whether a defendant's out-of-court statement is credible only "[w]here by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant." Obviously, the "rule[s] of law" which require a preliminary determination by the court as to the admissibility of a defendant's statement include *Jackson v. Denno*, 378 *U.S.* 368, 84 *S.Ct.* 1774, 12 *L. Ed.*2d 908 (1964), which requires the trial court to rule on the voluntariness of a confession, and *Miranda*, which requires the court to determine whether defendant was advised of his rights to remain silent and to counsel prior to any custodial interrogation resulting in the statement.

The need for a special cautionary instruction to the jury to consider the credibility of a defendant's out-of-court statement elicited through police interrogation arises from some of the same concerns which require a pretrial hearing as to such a statement's admissibility. Although a defendant's statement may have been preceded by appropriate *Miranda* warnings and may have been elicited by techniques of police interrogation which did not involve

sufficient coerciveness for the trial court to conclude that the statement was involuntary, the interrogation process may nevertheless raise serious questions regarding the statement's reliability. As the Court pointed out in *Crane v. Kentucky*, 476 *U.S.* 683, 688–89, 106 *S.Ct.* 2142, 2145–46, 90 *L. Ed.*2d 636, 644 (1986):

> [T]he circumstances surrounding the taking of a confession can be highly relevant to two separate inquiries, one legal and one factual. The manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness, a question most, but not all, States assign to the trial judge alone to resolve. See *Jackson v. Denno, supra,* at 378, 84 S.Ct. at 1781. But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence.

*See also State v. Smith,* 32 *N.J.* 501, 558, 161 *A.*2d 520 (1960), (concurring opinion) ("An involuntary confession may not be used, among other reasons, because of the probability that the end-product of a coercive process is unreliable and unworthy of credit."), *cert. denied,* 364 *U.S.* 936, 81 *S.Ct.* 383, 5 *L. Ed.*2d 367 (1961). Consequently, *Hampton* requires a trial court to specifically instruct a jury to consider the credibility of a defendant's statement only if it was elicited in the "physical and psychological environment" of police interrogation. Thus, such a special cautionary instruction is not required when a defendant has allegedly made a voluntary inculpatory statement to a non-police witness without being subjected to any form of physical or psychological pressure.

We recognize that a recent decision of another panel of this court broadly states that "[a]ny statement of a defendant," even a spontaneous admission, is subject to the requirement of *Hampton* and *N.J.R.E.* 104(c) that the jury should be instructed to decide whether a defendant's out-of-court statement is "credible." *State v. Jackson,* 289 *N.J.Super.* 43, 51, 672 *A.*2d 1254 (App.Div.1996). However, the spontaneous statements involved in *Jackson* were made to the police, and even though the panel's opinion does not expressly so indicate, the trial court presumably conducted a preliminary hearing to determine their admissibility. In contrast, defendant allegedly made statements to non-police witnesses prior to and during the crime, which were admitted into evidence

without a preliminary hearing. Consequently, the trial court was not required under *Hampton* or *N.J.R.E.* 104(c) to give a special instruction to the jury regarding its responsibility to decide the credibility of defendant's inculpatory statements. This conclusion is supported by the fact that every case in which we have concluded that a *Hampton* instruction was required involved a defendant's statement made while in police custody. *See State v. Jackson, supra,* 289 *N.J.Super.* at 47, 672 *A.*2d 1254; *State v. Jones,* 287 *N.J.Super.* 478, 485, 671 *A.*2d 586 (App.Div.1996); *State v. Jordan, supra,* 285 *N.J.Super.* at 593, 667 *A.*2d 1094; *State v. Laboy,* 270 *N.J.Super.* 296, 300–01, 637 *A.*2d 184 (App.Div.1994); *State v. Setzer,* 268 *N.J.Super.* 553, 560, 634 *A.*2d 127 (App.Div. 1993), *certif. denied,* 135 *N.J.* 468, 640 *A.*2d 850 (1994); *State v. Nutter,* 258 *N.J.Super.* 41, 50–51, 609 *A.*2d 65 (App.Div.1992); *State v. Boyle,* 198 *N.J.Super.* 64, 67–68, 486 *A.*2d 852 (App.Div. 1984); *State v. Bowman,* 165 *N.J.Super.* 531, 534, 398 *A.*2d 908 (App.Div.1979). Therefore, we disagree with the *Jackson* panel's broad pronouncement that any alleged out-of-court statement by a defendant is subject to the *Hampton* rule.

■ There was no genuine issue in this case as to the credibility of defendant's three alleged inculpatory statements. Each of these alleged statements was made spontaneously, without coercion by the police or anyone else, under circumstances which provided strong assurances of its probative value. Indeed, one of the alleged statements consisted of defendant offering a payment to a third party to murder the victim and another of a threat uttered by defendant as he was fleeing the scene of the murder. The only real issue at trial was whether defendant actually made these inculpatory statements, not whether the statements, if made, were credible. Consequently, the trial court had an obligation to adequately instruct the jury regarding its assessment of the credibility of Dorsey's and Wright's testimony that defendant made these statements, which the court properly discharged by giving not only the standard instruction regarding the jury's assessment of witness credibility but also by informing the jury

that they should consider Dorsey's and Wright's criminal records in determining their credibility. See *State v. Sinclair,* 57 *N.J.* 56, 63, 269 *A.*2d 161 (1970). Under the circumstances of this case, this was the only special instruction required to guide the jury in its assessment of the credibility of the evidence of defendant's alleged out-of-court statements.

We turn next to defendant's argument that the trial court erred in failing to instruct the jury in accordance with *State v. Kociolek,* *supra,* 23 *N.J.* at 421–22, 129 *A.*2d 417. In that case, the Court, quoting *Wigmore on Evidence,* §§ 1056, 2094 (3d ed.1940), stated that "there is a 'general distrust of testimony reporting any extra-judicial *oral statements* alleged to have been made, including a party's admissions'; the 'great possibilities of error in trusting to recollection-testimony of oral utterances, supposed to have been heard, have never been ignored; but an antidote is constantly given by an instruction to the jury against trusting overmuch the accuracy of such testimony.' " *Id.* at 421, 129 *A.*2d 417. Noting that the testimony of one of the State's witnesses regarding the defendant's alleged oral admission differed from the witness' account of that admission in an earlier trial, the Court concluded that the trial court erred "in refusing to charge the request that the jury 'should receive, weigh and consider such evidence with caution,' in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." *Ibid.*

However, as we noted in *State v. Jordan, supra,* 285 *N.J.Super.* at 596, 667 *A.*2d 1094, there is no "reported case in which a failure to include [the *Kociolek* ] principles within a trial court's final charge has been held plain error." *See State v. Kennedy,* 135 *N.J.Super.* 513, 522, 343 *A.*2d 783 (App.Div.1975) ("upon request" *Kociolek* cautionary instructions should be given); *State v. Travers,* 70 *N.J.Super.* 32, 38, 174 *A.*2d 747 (App.Div.1961) (failure to give *Kociolek* instructions *sua sponte* not plain error). In addition, we have indicated that the need for the kind of special cautionary instruction suggested in *Kociolek* may turn on whether

there is any genuine dispute as to the precise contents of an alleged oral statement. In *State v. Campisi*, 47 *N.J.Super.* 455, 460–61, 136 *A.*2d 292 (App.Div.1957), *certif. denied*, 26 *N.J.* 304, 139 *A.*2d 589 (1958), we concluded in an opinion written by then Judge, later Chief Justice, Hughes, that the omission of such a special instruction was not plain error, noting among other things that the "extreme simplicity in the nature of the oral admissions militate[ed] against the possibility of error in repetition, and project[ed] a clear issue of credibility as between the detective [who alleged that defendant made the admissions] and the defendant." *Id.* at 460, 136 *A.*2d 292.

We reach the same conclusion in this case. Defendant's alleged offer of $1,000 to Dorsey to kill the victim, his alleged comment to Wright threatening to kill the victim, and his alleged threat to a third party while fleeing the scene of the murder, were all clear and unequivocal. The meaning of such statements does not turn on any nuances of language, and the circumstances under which the statements were allegedly uttered do not present any substantial "risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." *State v. Kociolek, supra*, 23 *N.J.* at 421, 129 *A.*2d 417.

In sum, if an inculpatory statement was allegedly elicited by means of police questioning and a preliminary hearing was required to determine its admissibility, the court should instruct the jury in conformity with *Hampton* and *N.J.R.E.* 104(c) to decide whether the statement is "credible" and, if not, to disregard the statement. If an alleged inculpatory statement was oral and there is a genuine issue regarding its precise contents, the court should caution the jury in accordance with *Kociolek* with respect to the risk that the hearer misunderstood or inaccurately recalled the statement. But where, as in this case, an alleged oral inculpatory statement was not made in response to police questioning, and there is no genuine issue regarding its contents, there is no need for the court to give such special cautionary instructions

because the only question the jury must determine is whether the defendant actually made the alleged inculpatory statement.

Accordingly, we affirm defendant's convictions and sentences. However, as the State notes, the trial court at sentencing incorrectly imposed a $50 VCCB penalty for purposeful and knowing murder rather than the minimum $100 VCCB penalty mandated by *N.J.S.A.* 2C:43–3.1a, an error which is also reflected on the second page of the judgment of conviction. Consequently, we remand for entry of an amended judgment to comply with *N.J.S.A.* 2C:43–3.1a.